■ In the Matter of Basha Kill Area Association et al., Appellants, v Planning Board of the Town of Mamakating et al., Respondents. [849 NYS2d 112]—

---

Spain, J. Appeal from a judgment of the Supreme Court (Sackett, J.), entered March 21, 2007 in Sullivan County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Planning Board of the Town of Mamakating granting respondent Yukiguni Maitake Manufacturing Corporation of America's application for site plan approval and a special use permit.

In August 2006, respondent Planning Board of the Town of Mamakating (hereinafter the Board) issued a resolution granting conditional approval of a site plan and special use permit to respondent Yukiguni Maitake Manufacturing Corporation of America (hereinafter YMMCA) in connection with YMMCA's plans to build a mushroom production and processing facility on a 48-acre parcel in the Town of Mamakating, Sullivan County.[1] In this CPLR article 78 proceeding, petitioner Basha Kill Area Association (hereinafter BKAA), a not-for-profit corporation designated by the Department of Environmental Conservation as steward of the Basha Kill Wildlife Management Area, which is partially located in Mamakating, and petitioner Jodi Rubenstein, a resident of Mamakating, seek to have the Board's resolution annulled. Supreme Court found that BKAA lacked standing to bring this proceeding but, finding that Rubenstein had standing, proceeded to the merits and dismissed the petition. Petitioners appeal, and we now affirm.

Although it appeals, BKAA does not challenge Supreme Court's conclusion that it lacked standing. Accordingly, we dismiss the appeal as to BKAA. Respondents also challenge Rubenstein's standing, asserting that she has not made the requisite showing that, as a result of YMMCA's land use proposal, she will suffer some " 'direct harm . . . that is in some way different from that of the public at large' " (*Matter of Wittenberg Sportsmen's Club, Inc. v Town of Woodstock Planning*

---

1. The approved project encompasses 12.6 acres within the parcel and, when completed, the project will consist of a footprint of a 200,000 square foot structure, 65 feet in height, larger and higher than any other structure within Mamakating.

*Bd.*, 16 AD3d 991, 992 [2005], quoting *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774 [1991]). A petitioner's close physical proximity as a neighbor to a proposed project may give rise to an inference of direct harm, but standing will not be recognized unless the neighbor can show that the close proximity exposes her to a harm different from the harm experienced by the public generally (*see Matter of Oates v Village of Watkins Glen*, 290 AD2d 758, 761 [2002]). Rubenstein's residence is located adjacent to the proposed site for the mushroom factory, some 360 feet from YMMCA's property line and 941 feet from the proposed factory itself. Further, it is alleged that Rubenstein draws her water supply from a 160-year-old, 15-foot, hand-dug well. Given that the proposed factory's impact on the quality and quantity of groundwater resources was a concern specifically identified during the environmental review of the proposal, we concur with Supreme Court that Rubenstein has alleged direct harm, "an injury that is different in kind and degree from that of the public at large" (*Chase v Board of Educ. of Roxbury Cent. School Dist.*, 188 AD2d 192, 199 [1993]; *see Matter of Reed v Village of Philmont Planning Bd.*, 34 AD3d 1034, 1036 [2006], *lv denied* 8 NY3d 807 [2007]; *Matter of Wittenberg Sportsmen's Club, Inc. v Town of Woodstock Planning Bd.*, 16 AD3d at 992-993).

Turning to the merits, we address Rubenstein's assertion that the Board evaded its obligation under the State Environmental Quality Review Act (*see* ECL art 8 [hereinafter SEQRA]) to take a hard look at a number of environmental concerns and to provide a reasoned elaboration for its conclusion that the mushroom factory will not significantly impact the environment.[2] Mindful that, when reviewing a SEQRA determination, " 'it is not the role of the courts to weigh the desirability of any

**2.** Notably, Rubenstein is not barred from challenging the Board's SEQRA determination although the Board issued its SEQRA findings statement on May 24, 2005 and, in a previous CPLR article 78 proceeding, BKAA unsuccessfully challenged it, alleging essentially the same SEQRA violations asserted here. Although, in our view, that challenge was premature (*see Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd.*, 39 AD3d 1098, 1103 [2007]), BKAA did not appeal the 2005 Supreme Court decision upholding the Board's SEQRA findings statement and, thus, with regard to BKAA, that decision became the law of the case (*see Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush*, 16 AD3d 715, 719 [2005]; *Bonded Concrete v Town of Saugerties*, 282 AD2d 900, 903 [2001], *lv dismissed* 97 NY2d 653 [2001]; *Spa Realty Assoc. v Springs Assoc.*, 213 AD2d 781, 783 [1995]). Rubenstein, however, was not a party to the prior proceeding. Further, her challenge to the Board's SEQRA determination is timely because, in this case, the 30-day limitations period did not commence in 2005 when the Board issued its SEQRA findings

[SEQRA] action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively' " (*Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd.*, 39 AD3d 1098, 1103 [2007]), quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 416 [1986]), we are satisfied that the Board, as lead agency, took the requisite "hard look at the potential environmental impacts and [made] a reasoned elaboration of the basis of its findings" (*Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd.*, 39 AD3d at 1103; *see Matter of Ellsworth v Town of Malta*, 16 AD3d 948, 949 [2005]). The Board arrived at its decision with the assistance of its professional planner and independent consultants in hydrology, engineering and geology, and after feedback from the public, including petitioners. The extensive SEQRA findings statement defines 15 areas of environmental concern, each considered in depth and containing mitigation factors. Based on the foregoing, the Board satisfied its obligations pursuant to SEQRA and took a hard look at the areas of environmental concern, including water conservation and odor, noise and visual impact mitigation, and made a reasoned elaboration of the basis for its determination (*see Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd.*, 39 AD3d at 1103-1104; *Matter of Ellsworth v Town of Malta*, 16 AD3d at 950).

The thrust of Rubenstein's arguments to the contrary is that the Board improperly deferred its SEQRA obligations by conditioning its findings statement and its site plan/special use permit approval on the submission of further plans and other state and federal requirements. Rather than an improper deferral of its independent judgment as alleged by Rubenstein, the Board's imposition of conditions reflects a proper effort to mitigate concerns identified during the review process (*see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d 219, 234-235 [2007]). There can be no question that the law permits and contemplates that site plan approvals and special use permits can be conditional (*see* Town Law § 274-a [4]; § 274-b [4]). Indeed, the Board's acknowledgment that other state and federal requirements would have to be met "does not rise to the level of improper deferral" (*Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast*, 9 NY3d at 235).

---

statement but, rather, when it passed its resolution approving the site plan and granting the special use permit, because "it was the same agency that made the SEQRA determination and the site plan approval—both steps in an integrated process" (*Matter of North Country Citizens for Responsible Growth, Inc. v Town of Potsdam Planning Bd.*, 39 AD3d at 1103; *see Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 317 [2006]).

Next, Rubenstein alleges that the Board's resolution is void because, after the application was referred to the county planning agency—the Sullivan County Division of Planning and Community Development (hereinafter SCDPCD) (*see* General Municipal Law § 239-m [2], [3])—and SCDPCD recommended certain modifications, the Board could "not act contrary to such recommendation except by a vote of a majority plus one of all the members thereof" (General Municipal Law § 239-m [5]). Contrary to Rubenstein's assertions, our review of the SCDPCD recommendations and the Board's resolution reveals that the Board incorporated the recommendations into its resolution, including—as conditions for site plan approval and the special use permit—landscaping provisions to mitigate the visual impact of the proposed mushroom factory, the submission of a water conservation plan and an odor mitigation plan, and the inclusion of benchmarks for monitoring progress. As the Board did not act contrary to the SCDPCD modifications, the majority plus one requirement was not triggered.

Nor are we persuaded that the Board failed to provide the SCDPCD with all materials required pursuant to General Municipal Law § 239-m. At the time of its recommendation, the SCDPCD had before it all the studies and documentation that the Board considered in issuing its resolution; Rubenstein's assertion that respondents were thereafter obligated to provide SCDPCD with proposed mitigation plans to address the recommendations made by SCDPCD following its review of the proposal is simply unsupported by the language of the statute (*see* General Municipal Law § 239-m [1] [c]; *Matter of Batavia First v Town of Batavia*, 26 AD3d 840, 842 [2006], *lv denied* 7 NY3d 709 [2006]).

Finally, we find no merit in Rubenstein's remaining contentions, i.e., that the Board improperly delegated its decision-making powers to its chair by authorizing the chairperson to sign the final approval once certain conditions were met (*see e.g. Matter of Municipal Consultants & Publs. v Town of Ramapo*, 47 NY2d 144, 150 [1979]; *Matter of Karedes v Colella*, 292 AD2d 138, 141 [2002], *revd on other grounds* 100 NY2d 45 [2003]), or that she was denied due process of law by virtue of the Board's failure to hold an additional public hearing after YMMCA revised its site plans (*see* Town Law § 274-a [8]; *Matter of Hickey v Planning Bd. of Town of Kent*, 173 AD2d 1086, 1088-1089 [1991]).

In sum, we hold that the Board made a rational decision in approving the resolution, which is supported by substantial evidence in the voluminous record and, therefore, the determina-

tion will not be disturbed (*see Matter of Gilchrist v Town of Lake George Planning Bd.*, 255 AD2d 791, 792 [1998]; *Matter of M & M Partnership v Sweenor*, 210 AD2d 575, 575-577 [1994]).

Crew III, J.P., Peters, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.